UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                         Case No. 3:24-cr-279

        Plaintiff,

    v.                                                        MEMORANDUM OPINION
                                         AND ORDER

Salei Harris (14),

        Defendant.

## I.  INTRODUCTION

Defendant Salei Harris seeks to suppress statements he made to law enforcement officers on June 24, 2024.  (Doc. No. 387).  The government filed a brief in opposition to the motion.  (Doc. No. 388).  Harris did not file a brief in reply.  For the reasons stated below, I deny Harris's motion.

## II.  BACKGROUND

On June 20, 2024, United States Postal Inspection Service Inspector Tyler Sherman obtained a search warrant to open a parcel that was to be delivered to an address on Clay Street in Sandusky, Ohio.  (Doc. No. 388-2 at 1).  After that search uncovered nearly 2,800 grams of suspected methamphetamine, Sherman obtained an anticipatory search warrant permitting officers to search the Clay Street residence if the package was opened inside the residence.  (*Id.*).  Sherman delivered the parcel on June 24, 2024, by leaving it near the front door.  (*Id.* at 2).  Shortly thereafter, a man opened the door, took the package inside, and opened it, which triggered the anticipatory search

warrant.  (*Id.*).  Officers with the Sandusky Police Department executed the warrant and found Harris inside.

Harris was placed in handcuffs while officers searched the residence.  Detective Ronald Brotherton and Sherman questioned Harris about the package and its contents.  Harris admitted that Johnny Cherry, one of Harris's co-defendants in this case, told Harris to be at his Clay Street residence in order to accept delivery of the package, retrieve the methamphetamine, and burn the box.  Harris later was charged by indictment with conspiracy to distribute, and possess with intent to distribute, controlled substances in violation of 21 U.S.C. § 846, as well as other drug and weapons charges.  (Doc. No. 18).

### III.    ANALYSIS

Harris argues any statements he made on June 24, 2024, "must be suppressed because he was never properly Mirandized."  (Doc. No. 387 at 4).  He asserts Brotherton made a "seemingly rushed [and] hasty recital of the Miranda warnings," and that "it is unclear whether [he] truly was aware of the potential consequences" of waiving his rights.  (*Id.* at 6-7).  The government contends Harris's motion must be denied because the evidence demonstrates Harris knowingly and willingly waived his rights and spoke with officers.  (Doc. No. 388 at 7-8).

The Fifth Amendment requires that an individual in police custody must be informed of his constitutional rights before the police may interrogate him.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  The term "interrogation" refers both to express questioning and "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  The parties agree that Harris was in custody at the time Brotherton questioned him.

2

"A waiver of *Miranda* rights must be voluntary, that is, the product of a free and deliberate choice rather than intimidation, coercion or deception." *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (citations and internal quotation marks omitted).  A court must conclude a *Miranda* waiver was "both an uncoerced choice and [made with] the requisite level of comprehension." *Id.* "The crucial inquiry is not whether the defendant knew and understood every possible consequence of a waiver, but, instead, whether he knew that he could choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *United States v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015) (citations and internal quotation marks omitted).

The evidence establishes that Harris voluntarily waived his rights.  As recorded on a body camera, Brotherton told Harris that he had the right to remain silent and the right to an attorney, including a court appointed one if needed.  (Doc. No. 389 at 0:54-1:06).  Harris responded "Yes, sir." (*Id.* at 1:07).

Harris implies that the "number of armed officers on-site[ and] the fact [he] was detained with his hands cuffed behind his back . . . heighten[ed] the stressfulness of the situation," demonstrate his waiver was not voluntary but was the product of intimidation.  (Doc. No. 387 at 7).

I do not find this argument persuasive.  Harris was not surrounded by officers at the time Brotherton gave his *Miranda* warnings.  Only Brotherton and Sherman were standing near Harris.  Neither of them spoke or acted aggressively toward Harris, and nothing in Harris's demeanor indicates he felt intimidated by them.  (*See* Doc. No. 389 at 1:07-2:58).

Moreover, Harris does not dispute the government's representation that Harris had at least three prior felony convictions.  (*See* Doc. No. 388 at 4 n.4).  Harris's prior experience with the criminal justice system is relevant to the totality of the circumstances surrounding his waiver of his rights because it has "a bearing on his ability to fully comprehend his rights and the consequences of waiving them." *United States v. Mullikin*, 534 F. Supp. 2d 734, 745 (E.D. Ky. 2006), *aff'd,* 267 F.

3

App'x 456 (6th Cir. 2008) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)). *See also United States v. Jones*, 429 F. Supp. 3d 381, 388 (W.D. Ky. 2019).

Harris also questions the "credibility" of the officers executing the search warrant because only 1 out of 10 officers – Brotherton – wore a body camera at any point during the search. (Doc. No. 387 at 5). But other than generalized complaints about the lack of body camera recordings and vague suspicions about what alleged misconduct those recordings might have contained if made, Harris does not allege any officer in fact engaged in coercive behavior off camera. Harris fails to show he suffered any prejudice from the absence of additional recording because he was present during the search and has personal knowledge of what occurred. And he does not identify any case in which a court concluded a defendant's constitutional rights were violated due to the mere absence of video recordings.

I conclude the government has met its burden to show, under the totality of the circumstances, that Harris voluntarily waived his rights. Therefore, I deny his motion to suppress.

A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). I conclude Harris fails to show there is any material dispute of fact regarding what is depicted in the video recording. Nor has he raised any allegation of officer misconduct prior to the use of the body camera. Therefore, I deny his request for an evidentiary hearing.

4

## IV.    CONCLUSION

I conclude Defendant Salei Harris voluntarily waived his rights to remain silent and to speak to an attorney before answering any questions and that the interrogation occurring after that waiver did not violate the Fifth Amendment.  Therefore, and for the reasons set forth above, I deny his request for a hearing and his motion to suppress.  (Doc. No. 387).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge